# EXHIBIT 34

#8

# MARAN, INC.
# EMPLOYEE STOCK OWNERSHIP TRUST

DOL0000006481



TABLE OF CONTENTS

Page

ARTICLE 1. ...........................................................................................................2

NAME ....................................................................................................................2

ARTICLE 2. ...........................................................................................................2

MANAGEMENT AND CONTROL OF TRUST FUND ASSETS..........................2

2.1.   The Trust Fund .......................................................................................2
2.2.   Responsibility of Trustee ........................................................................2
2.3.   General Powers .......................................................................................2
2.4.   Compensation and Expenses...................................................................7
2.5.   Exercise of Trustee Duties ......................................................................7
2.6.   Plan Administration.................................................................................8
2.7.   Continuation of Powers upon Trust Termination ...................................8

ARTICLE 3. ...........................................................................................................8

PROVISIONS RELATED TO INVESTMENT IN COMPANY STOCK ...............8

3.1.   Investment of Cash .................................................................................8
3.2.   Stock Dividends, Splits and Other Capital Reorganizations ...................9
3.3.   Voting of Shares and Tender or Exchange Offers...................................9
3.4.   Put Option...............................................................................................9

ARTICLE 4. .........................................................................................................10

MISCELLANEOUS .............................................................................................10

4.1.   Disagreement as to Acts........................................................................10
4.2.   Persons Dealing with Trustee ...............................................................10
4.3.   Benefits May Not Be Assigned or Alienated........................................10
4.4.   Evidence ...............................................................................................10
4.5.   Waiver of Notice...................................................................................10
4.6.   Counterparts .........................................................................................10
4.7.   Governing Laws and Severability .........................................................10
4.8.   Successors, etc. .....................................................................................10
4.9.   Action ...................................................................................................11
4.10.   Conformance with Plan .......................................................................11
4.11.   Headings...............................................................................................11

ARTICLE 5. .........................................................................................................11

NO REVERSION TO COMPANY .......................................................................11

ARTICLE 6. .........................................................................................................12

CHANGE OF TRUSTEE......................................................................................12

6.1.   Resignation ...........................................................................................12

i

6.2.     Removal of the Trustee.................................................................................12
6.3.     Duties of Resigning or Removed Trustee and of Successor Trustee.......................12
6.4.     Filling Trustee Vacancy...............................................................................13

**ARTICLE 7.** ...............................................................................................................**13**

**ADDITIONAL EMPLOYERS** ...................................................................................**13**

**ARTICLE 8.** ...............................................................................................................**14**

**AMENDMENT AND TERMINATION** .....................................................................**14**

8.1.     Amendment ................................................................................................14
8.2.     Termination ...............................................................................................14

**ARTICLE 9.** ...............................................................................................................**15**

**INDEMNIFICATION AND DEFENSE OF ACTIONS** ............................................**15**

9.1.     Indemnification ..........................................................................................15
9.2.     Notice and Assumption of Defense................................................................16
9.3.     Reimbursement of Expenses ........................................................................16
9.4.     Governmental Investigations .......................................................................17
9.5.     Limitation .................................................................................................17
9.6.     Additional Agreements................................................................................17

**EXHIBIT A**................................................................................................................**1**

ii

DOL0000006483

EBG Draft 11/2/2006

# MARAN, INC.
## EMPLOYEE STOCK OWNERSHIP TRUST

THIS TRUST AGREEMENT (the "Trust Agreement") is made and entered into as of the 3rd day of November, 2006, by and between Maran, Inc., a Delaware corporation (the "Company"), and First Bankers Trust Services, Inc., not in its corporate capacity but solely in its capacity as trustee, and its successors and assigns in the trust hereby evidenced (the "Trustee").

### WITNESSETH THAT:

**WHEREAS**, the Company has established the Maran, Inc. Employee Stock Ownership Plan, adopted effective as of January 1, 2006 (the "Plan"), and a copy of the Plan has been filed with the Trustee;

**WHEREAS**, the Company desires to establish the Maran, Inc. Employee Stock Ownership Trust (the "Trust") to implement and form a part of the Plan;

**WHEREAS**, the Trust is designed to hold such Company Stock (as defined in the Plan), sums of money, and other property contributed or transferred from time to time to the Trust under the Plan, and all income thereon (such assets are referred to hereinafter as the "Trust Fund"); and

**WHEREAS**, all capitalized terms used herein, which are not otherwise defined herein, shall have the meanings given to such terms in the Plan;

**NOW, THEREFORE, IT IS AGREED**, by and between the parties hereto, pursuant to the authority delegated to the undersigned officer of the Company by resolution of its Board of Directors, that the provisions contained herein shall constitute the agreement between the Company and the Trustee in connection with the Plan and Trust. The Trustee shall hold the Trust Fund without distinction between the principal and income thereof, and the Trustee shall apply the Trust Fund, after payment of all necessary expenses, for the exclusive benefit of Plan Participants and their Beneficiaries, in accordance with the provisions of this Trust Agreement.

**IT IS FURTHER AGREED**, that the Trustee hereby accepts its appointment as the trustee of the Trust pursuant to the terms of this Trust Agreement and agrees to perform the obligations set forth in this Trust Agreement.

**IT IS FURTHER AGREED**, by and between the parties hereto, as follows:

# ARTICLE 1.

## NAME

The Trust shall be known as the "MARAN, INC. EMPLOYEE STOCK OWNERSHIP TRUST."

# ARTICLE 2.

## MANAGEMENT AND CONTROL OF TRUST FUND ASSETS

**2.1.    The Trust Fund.** The Trust Fund at any date means all property of every kind then held by the Trustee hereunder. The Trustee may manage, administer, invest and account for all contributions made by the Employer or Employers under the Plan as one Trust Fund. If, for any reason, it becomes necessary to determine the portion of the Trust Fund allocable to each of the employees and former employees of any Employer as of any date, the Committee (as defined in Section 2.6) shall specify such date as an Accounting Date and, after all adjustments required under the Plan as of that Accounting Date have been made, the portion of the Trust Fund attributable to such employees and former employees shall consist of an amount equal to the aggregate of the account balances of each employee and former employee of that Employer plus an amount equal to any allocable contributions made by that Employer since the close of the immediately preceding Plan Year, minus any losses on such contributions, all as determined by the Committee.

**2.2.    Responsibility of Trustee.** The Trustee shall not be responsible in any way for the adequacy of the Trust Fund to satisfy and discharge any or all liabilities under the Plan or for the proper application of distributions made or other action taken upon the written direction of the Committee. The powers, duties and responsibilities of the Trustee shall be limited to those set forth in this Trust Agreement, and nothing contained in the Plan, either expressly or by implication, shall be deemed to impose any additional powers, duties or responsibilities on the Trustee.

**2.3.    General Powers.** Subject to the provisions of Sections 2.5 and 2.6 and Article 3, with respect to the Trust Fund, the Trustee shall have the following powers, rights and duties in addition to those provided elsewhere in this Trust Agreement or by law:

(a)    to receive and to hold all contributions and dividends paid to it in cash or stock under the Plan; provided, however, that the Trustee shall have no duty to require any contributions to be made to it, to determine that the contributions received by it comply with the provisions of the Plan or with any resolution of the Board of Directors providing therefor;

(b)    as directed by the Committee, to retain in cash (pending investment, reinvestment or the payment of dividends) such amount as the Committee directs the Trustee to retain, which amount represents the amount the Committee determines may be required for the proper administration of the Trust and to invest such cash as provided in Section 3.1; provided, however, that pending receipt of directions

2

DOL0000006485

from the Committee, the Trustee may retain reasonable amounts of cash, in its discretion, without any liability for interest;

(c)     as directed by the Committee, to make distributions from the Trust Fund to such persons, in such manner, at such times and in such forms (Company Stock, cash or a combination of both), without inquiring as to whether a payee is entitled to the payment or as to whether a payment is proper, and without liability for a payment made in good faith without actual notice or knowledge of the changed condition or status of the payee.  If any payment of benefits directed by the Committee to be made from the Trust Fund by the Trustee is not claimed, the Trustee shall notify the Committee of that fact within a reasonable period of time. The Trustee shall dispose of such payment as the Committee shall direct.  The Trustee shall have no obligation to search for or ascertain the whereabouts of any payee or distributee of benefits from the Trust Fund;

(d)     subject to the provisions of Section 13 of the Plan and Section 2.5, to vote any stocks, including Company Stock, bonds or other securities held in the Trust, or otherwise consent to or request any action on the part of the issuer in person, by proxy or power of attorney (a copy of the provisions of Section 13 of the Plan as in effect on the effective date of this Trust Agreement is attached hereto as Exhibit A, and such Exhibit A shall be updated by the Company promptly after any revisions are made to Section 13 of the Plan);

(e)     to contract or otherwise enter into transactions between itself, as Trustee, and the Company or any Company shareholder for the purpose of acquiring Company Stock and, subject to the provisions of Section 2.5, to retain such Company Stock or dispose of Company Stock, provided that in the event counsel for the Trustee determines that Company Stock so disposed of requires registration under the Securities Act of 1933 and/or qualification of the securities under the Blue Sky laws of any state or states, then the Company, at its own expense, will take or cause to be taken any and all such actions as may be necessary or appropriate to effect such registration and/or qualification;

(f)     as directed by the Committee, and subject to the provisions of Section 2.5, to compromise, contest, arbitrate, settle or abandon claims and demands by or against the Trust Fund;

(g)     as directed by the Committee, to begin, maintain or defend any litigation necessary in connection with the investment, reinvestment and administration of the Trust, and, to the extent not paid from the Trust Fund, the Company shall indemnify the Trustee against all expenses and liabilities reasonably sustained or anticipated by it by reason thereof (including reasonable attorneys' fees);

(h)     as directed by the Committee, to retain any funds or property subject to any dispute without liability for the payment of interest, or to decline to make payment or delivery thereof until final adjudication is made by a court of competent jurisdiction;

3

DOL0000006486

(i)    to report to the Company as of the last day of each Plan Year (which shall be the same as the Trust's fiscal year) and as of any Accounting Date (or as soon thereafter as practicable), or at such other times as may be required under the Plan, the then "Net Worth" of the Trust Fund – that is, the fair market value of all property held in the Trust Fund, reduced by any liabilities of the Trust Fund other than liabilities to Plan Participants and their Beneficiaries, as determined by the Trustee;

(j)    to provide to the Company and the Committee an annual written account and accounts for such other periods as may be required under the Plan, showing the Net Worth of the Trust Fund at the end of the period, all investments, receipts, disbursements and other transactions made by the Trustee during the accounting period, and such other information as the Trustee may possess which the Company advises the Trustee in writing that it requires to comply with ERISA Section 103 in connection with the Plan. The Trustee shall keep accurate accounts of all investments, earnings thereon, and, except with respect to Participant voting records and valuation reports of the Independent Appraiser (as provided below) prepared for the Trustee in connection with any purchase or sale of Company Stock by the Trust accounts, and all books and records related to such investments shall be open to inspection by any person designated by the Company or the Committee to the Trustee in writing. All accounts of the Trust shall be kept by the Trustee on an accrual basis. If, during the term of this Trust Agreement, the Department of Labor issues regulations under ERISA regarding the valuation of securities or other assets for purposes of the reports required by ERISA, the Trustee shall use such valuation methods for purposes of the accounts described by this subparagraph. If shares of Company Stock are not traded with sufficient volume or frequency, as determined by the Committee, to be considered as being readily tradable on a national securities market or exchange, all valuations of shares of Company Stock shall originally be made by an Independent Appraiser (as described in Code Section 401(a)(28)(C)) retained by the Trustee, and reviewed and finalized by the Trustee in accordance with ERISA Section 3(18)(B). The Committee may approve such accounting by written notice of approval delivered to the Trustee or by failure to express objection to such accounting in writing delivered to the Trustee within thirty (30) days after the date upon which the accounting was delivered to the Committee (the "Objection Period"). Upon receipt of a written approval from the Committee of the accounting, or upon the expiration of the Objection Period, such accounting shall be deemed to be approved, and the Trustee shall be released and discharged as to all items, matters and things set forth in such account, as fully as if such accounting had been settled and allowed by decree of a court of competent jurisdiction in an action or proceeding in which the Trustee, the Company and all persons having or claiming to have any interest in the Trust Fund or under the Plan were parties;

(k)    as directed by the Committee, to pay any estate, inheritance, income or other tax, charge or assessment attributable to any benefit which a payee shall or may be required to pay out of such benefit; and to require before making any payment

4

such release or other document from any taxing authority and such indemnity from the intended payee as the Trustee shall deem necessary for its protection;

(l)  to employ and to reasonably rely upon information and advice furnished by agents, attorneys, Independent Appraisers, accountants or other persons of its choice (who also may be employed by or may represent the Company) for such purposes as the Trustee considers reasonably necessary;

(m)  to presume, until advised to the contrary by the Company, the Committee or the Internal Revenue Service, that the Trust is a "qualified trust" under Code Section 401(a) entitled to tax exemption under Code Section 501(a);

(n)  as directed by the Committee, to invest and reinvest the assets of the Trust Fund in personal property of any kind, including, but not limited to bonds, notes, debentures, mortgages, equipment trust certificates, investment trust certificates, guaranteed investment contracts, preferred or common stock, open-end or closed-end mutual funds, common trust funds (the provisions of which govern the investment of such assets and which the Plan incorporates by this reference) as described in Code Section 584, which the Trustee (or its affiliate) maintains exclusively for the collective investment of money contributed by the Trustee (or its affiliate) in its capacity as trustee of the Trust, and registered investment companies; provided, however, that all investments in Company Stock shall be undertaken pursuant to the provisions of Section 3.1. The Trustee shall follow the directions of the Committee and shall have no duty or obligation to review the assets from time to time so acquired, nor to make any recommendations with respect to the investment, reinvestment or retention thereof, and shall have no liability for any losses arising from investments made in accordance with such directions, or lack thereof;

(o)  as directed by the Committee, to exercise any options, subscription rights and other privileges with respect to Trust assets, subject to the provisions of Article 3;

(p)  to register ownership of any securities or other property held by it in its own name or in the name of a nominee, with or without the addition of words indicating that such securities are held in a fiduciary capacity, and to hold any securities in bearer form; provided, however, that the books and records of the Trustee shall at all times reflect that all such investments are part of the Trust;

(q)  to borrow such sum or sums from time to time as the Trustee or Committee considers necessary or desirable and in the best interest of the Trust Fund, including to finance the purchase of Company Stock, and to enter into such agreements as the Trustee or Committee determines necessary or appropriate to accomplish such actions, and for that purpose to mortgage or pledge any part of the Trust Fund (subject to the provisions of Code Section 4975(c) and ERISA Section 406 and the regulations issued thereunder); provided, however, that the Trustee shall have complete and independent discretion with respect to any decision for the Trust to borrow funds for any Trust purchase of Company Stock;

5

(r)     if the Company or the Committee shall advise the Trustee that any loan transaction contemplated by the Trustee is with a disqualified person (within the meaning of Code Section 4975) or that a disqualified person has or proposes to guarantee a loan to the Plan or Trust, the following additional terms and conditions shall apply to such loan;

     (i)     The Trustee will use the proceeds of such loan within a reasonable time after receipt only for any of the following purposes: (i) to acquire Company Stock, (ii) to repay such loan, or (iii) to repay a prior Acquisition Loan. Except as permitted under the Code or ERISA or applicable regulations, no financed Company Stock may be subject to a put, call or other option, or buy-sell or similar arrangement while held by and when distributed from the Trust, whether or not the Plan is then an employee stock ownership plan;

     (ii)     The interest rate of the loan may not be more than a reasonable rate of interest;

     (iii)     Any collateral the Trust pledges to the creditor must consist only of the assets purchased by the borrowed funds and those assets the Trust used as collateral on any prior Acquisition Loan repaid with the proceeds of the current Acquisition Loan;

     (iv)     The creditor may have no recourse against the Trust under such loan except with respect to such collateral given for the loan, contributions (other than contributions of Company Stock) that the Company makes to the Trust to meet its obligations under the loan, and earnings attributable to such collateral and the investment of such contributions. As determined by the Committee and communicated to the Trustee thereby, the payment made with respect to an Acquisition Loan by the Plan during a Plan Year must not exceed an amount equal to the sum of such contributions and earnings received during or prior to the year less such payments in prior years. The Committee shall account for such contributions and earnings on the books of account of the Plan until the Trust repays the loan;

     (v)     In the event of default upon such a loan, the value of Trust assets transferred in satisfaction of the loan must not exceed the amount of default, and the loan shall provide for a transfer of Trust assets upon default only upon and to the extent of the failure of the Trust to meet the payment schedule of the loan;

     (vi)     The Committee shall maintain all assets acquired with the proceeds of an Acquisition Loan in a suspense account. In directing the Trustee to withdraw assets from the suspense account, the Committee will apply the provisions of Treasury Regulation Section 54.4975-7(b)(8) and (15) as if all securities in the suspense account were encumbered. Upon the payment of any portion of the loan, the Trustee will effect the release of assets in the suspense account from encumbrances in accordance with directions from the Committee in accordance with the terms of the Plan;

6

(s)   to deposit securities with a clearing corporation as defined in the applicable Uniform Commercial Code. The certificates representing securities, including those in bearer form, may be held in bulk form with, and may be merged into, certificates of the same class of the same issuer that constitute assets of other accounts or owners, without certification as to the ownership attached. Utilization of a book-entry system may be made for the transfer or pledge of securities held by the Trustee or by a clearing corporation. The Trustee shall at all times, however, maintain a separate and distinct record of the securities owned by the Trust;

(t)   to participate in and use the Federal Book-Entry Account System, a service provided by the Federal Reserve Bank for its member banks for deposit of Treasury securities; and

(u)   to perform any and all other acts that are necessary or appropriate for the proper management, investment and distribution of the Trust Fund.

**2.4.   Compensation and Expenses.** The Trustee shall be entitled to reasonable compensation for its services, as agreed to between the Company and the Trustee from time to time in writing, and to reimbursement of all reasonable expenses incurred by the Trustee in the administration of the Trust and Plan. The Trustee is authorized to pay from the Trust Fund all expenses reasonably incurred by the Trustee, to the extent such fees and expenses are for the ordinary and necessary administration and operation of the Trust, including its compensation, compensation to any agents employed by the Trustee, and any reasonable accounting and reasonable legal expenses, to the extent they are not paid directly by the Company; any such amounts, if not paid from the Trust Fund, shall be paid by the Company. Any fee or expense paid directly or indirectly by the Company shall not be considered an Employer contribution to the Trust, provided the fee or expense relates to the ordinary and necessary administration of the Trust. The Trustee shall be fully protected in making payments of administrative expenses pursuant to the written directions of the Committee.

**2.5.   Exercise of Trustee Duties.** The Trustee shall discharge its duties hereunder solely in the interest of Plan Participants and other persons entitled to benefits under the Plan, and:

(a)   for the exclusive purposes of:

(i)   providing benefits to Participants and other persons entitled to benefits under the Plan; and

(ii)   defraying reasonable expenses of administering the Plan;

(b)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

7

(c)    in accordance with the documents and instruments governing the Plan unless, in the good faith judgment of the Trustee, the documents and instruments are not consistent with the provisions of ERISA or this Trust Agreement; and

(d)    in a manner that does not constitute a non-exempt prohibited transaction under Code Section 4975(c) or ERISA Sections 406 or 407.

**2.6.   Plan Administration.** The Plan shall be administered by a committee (the "Committee"), as contemplated in Sections 1.4 and 17.1 of the Plan. Except as provided in Section 2.3, the Trustee shall have no obligation to act unless directed by the Committee. The Committee may authorize one or more individuals to sign all communications between the Committee and Trustee and shall at all times keep the Trustee advised of the names of the members of the Committee and individuals authorized to sign on behalf of the Committee, and provide specimen signatures thereof. With the Trustee's prior written consent, the Committee may authorize the Trustee to act, without specific directions or other directions or instructions from the Committee, on any matter or class of matters with respect to which directions or instructions from the Committee are called hereunder. The Trustee shall be fully protected in relying on any communication sent by any authorized person and shall not be required to verify the accuracy or validity of any signature. If the Trustee requests any directions hereunder and does not receive them, the Trustee shall act or refrain from acting, as it may determine, with no liability for such action or inaction. The powers, duties and responsibilities of the Trustee shall be limited to those set forth in this Trust Agreement, or as later agreed upon by the Trustee, Company, and Committee in writing, and nothing contained in the Plan, either expressly or by implication, shall be deemed to impose any additional powers, duties or responsibilities on the Trustee.

**2.7.   Continuation of Powers upon Trust Termination.** Notwithstanding anything to the contrary in this Trust Agreement, upon termination of the Trust the powers, rights and duties of the Trustee hereunder shall continue until all Trust Fund assets have been liquidated.

## ARTICLE 3.

## PROVISIONS RELATED TO INVESTMENT IN COMPANY STOCK

**3.1.   Investment of Cash.** If an Employer's contribution made pursuant to the Plan or any dividends pursuant to the Plan for any Plan Year are in cash, such cash shall be used by the Trustee first to make any scheduled amortization payment on an Acquisition Loan and, if any amounts remain thereafter, as the Trustee is directed in writing by the Committee. Subject to the preceding sentence, to the extent possible, the Trustee shall purchase Company Stock with the assets contained in the Participants' ESOP Cash Accounts, unless prohibited by ERISA. The Trustee, in its sole discretion, may purchase Company Stock from the Company or from any shareholder, and such stock may be outstanding, newly issued or treasury stock. All such purchases must be at a price that does not exceed the fair market value, as determined by an Independent Appraiser (as described in Code Section 401(a)(28)(C)) if such stock is not publicly traded. Pending investment of cash in Company Stock, such cash may be invested as provided in Section 2.3(n).

8

DOL0000006491

**3.2.   Stock Dividends, Splits and Other Capital Reorganizations.**  Any Company Stock received by the Trust as a stock split or dividend or as a result of a reorganization or other recapitalization of the Company shall be allocated as of each Accounting Date under the Plan in proportion to the Company Stock to which it is attributable.

**3.3.   Voting of Shares and Tender or Exchange Offers.**  Subject to the provisions of Section 2.5, and Section 13 of the Plan (a copy of which is attached hereto as Exhibit A, and which Exhibit A shall be updated by the Company promptly after any revisions are made to Section 13 of the Plan), the Trustee shall exercise all voting, tender, exchange and other rights with respect to Company Stock held in the Trust Fund at its discretion.

**3.4.   Put Option.**  If the distribution of a Participant's Account is to be made in cash, if a Participant exercises his rights to diversify his ESOP Stock Account under Section 6.2 of the Plan, or if the Trustee expects to incur substantial Trust expenses that will not be paid directly by the Employers, and the Trustee determines that the Trust Fund has insufficient cash to make anticipated distributions or diversification transfers or to pay Trust expenses, the Trust shall have a "put option" on Company Stock it holds to require the Company to purchase Company Stock, to the extent the Trustee reasonably believes it necessary to make such anticipated distributions and diversification transfers and to pay such expenses.  The purchase price for the sale of stock by the Trustee to the Company shall not be less than "adequate consideration" within the meaning of ERISA Section 3(18) as of the date of the sale.

The implementation of such a put option shall be pursuant to one or more of the following arrangements as the Trustee shall determine:

(a)   The Trustee shall put Company Stock to the Company on an Accounting Date in an amount sufficient to provide an amount of cash estimated by it in good faith to be sufficient to make anticipated distributions from the Trust Fund for payment of benefits or expenses until the next succeeding Accounting Date.

(b)   If permitted under applicable law, rulings and regulations, and not a nonexempt prohibited transaction under Code Section 4975(c) or ERISA Section 406 or 407 (or if exempted by a prohibited transaction exemption), the Trustee, in its discretion, shall put Company Stock to the Company on a date other than an Accounting Date and shall be paid the cash therefor.

(c)   If permitted under applicable law, rulings, or regulations, and not a nonexempt prohibited transaction under Code Section 4975(c) or ERISA Section 406 or 407 (or if exempted by a prohibited transaction exemption), the Trustee shall cause the Company to advance to the Trustee the amounts needed to make benefit distributions or to pay expenses.  Such amounts shall be reimbursed by the Trustee to the Company, with such interest as may be permitted under ERISA, as of the Accounting Date next following the date on which the Trustee exercises the put option, to the extent appropriate to make such reimbursement.

(d)   The Trustee may cause a special valuation of the Company Stock to be made by the Independent Appraiser as of the date of the put option to the Company, or the

9

Trustee may cause benefits to be distributed based on the value of a Participant's ESOP Account as of the Valuation Date next following the later of the Participant's termination of employment or the date for which payment is requested.

## ARTICLE 4.

## MISCELLANEOUS

**4.1.    Disagreement as to Acts.**  If there is a disagreement between the Trustee and anyone as to any act or transaction reported in any accounting, the Trustee shall have the right to have its account settled by a court of competent jurisdiction.

**4.2.    Persons Dealing with Trustee.**  No person dealing with the Trustee shall be required to see to the application of any money paid or property delivered to the Trustee, or to determine whether or not the Trustee is acting pursuant to any authority granted to it under this Agreement or the Plan.

**4.3.    Benefits May Not Be Assigned or Alienated.**  The interests under the Plan and this Trust Agreement of Participants and other persons entitled to benefits under the Plan are not subject to the claims of their creditors and may not be voluntarily or involuntarily assigned, alienated or encumbered, except to the extent that the Committee directs the Trustee that any such interests are subject to a qualified domestic relations order (as defined in Code Section 414(p)) as provided in Section 14.1 of the Plan, or as required under Code Section 401(a)(13)(C).

**4.4.    Evidence.**  Evidence required of anyone under this Trust Agreement may be by certificate, affidavit, document or other instrument which the person acting in reliance thereon considers pertinent and reliable, and which is signed, made or presented by the proper party.

**4.5.    Waiver of Notice.**  Any person entitled to notice under this Trust Agreement may waive such notice in writing.

**4.6.    Counterparts.**  This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original and no other counterparts need be produced.

**4.7.    Governing Laws and Severability.**  This Trust Agreement shall be construed and administered according to the laws of the State of New York to the extent that the laws of the United States of America do not preempt such laws.  If any provision of this Trust Agreement is held illegal or invalid, the illegality or invalidity shall not affect the remaining provisions of the Trust Agreement, but shall be severable, and the Trust Agreement shall be construed and enforced as if the illegal or invalid provision had never been inserted herein.

**4.8.    Successors, etc.**  This Trust Agreement shall be binding on the Company, the Employers and any successors thereto by virtue of any merger, sale, dissolution, consolidation or reorganization, on the Trustee and its successor, and on all persons entitled to benefits under the Plan and their respective heirs and legal representatives.

10

DOL0000006493

**4.9.   Action.** Any action required or permitted to be taken by the Company under this Agreement shall be by resolution of its Board of Directors or by a person or persons authorized by resolution of its Board of Directors.  The Trustee shall not recognize or take notice of any appointment of any representative of the Company or Committee unless and until the Company or the Committee shall have notified the Trustee in writing of such appointment and the extent of such representative's authority.  The Trustee may assume that such appointment and authority continue in effect until it receives written notice to the contrary from the Company or Committee.  Any action taken or omitted to be taken by the Trustee by authority of any representative of the Company or Committee within the scope of his authority shall be as effective for all purposes hereof as if the Company or Committee had authorized such action or non-action.

**4.10.   Conformance with Plan.** Unless otherwise indicated in this Trust Agreement, all capitalized terms in the Trust Agreement shall have the meaning stated in the Plan.  To the extent the provisions of the Plan and this Trust Agreement conflict, the Plan provisions shall govern; provided, however, that the Trustee's duties and obligations shall be determined solely under this Trust Agreement, and the Trustee shall not be bound by any Plan amendment until it has received a written copy of the amendment.

**4.11.   Headings.** The headings used in this Trust Agreement are for convenience of reference only and shall have no substantive effect on the provisions of this Trust Agreement.

**4.12.   Written Directions.**  All directions from the Company and/or from the Committee to the Trustee shall be in writing.  E-mails and facsimiles shall be deemed to satisfy this requirement.

## NO REVERSION TO COMPANY

No part of the corpus or income of the Trust Fund shall revert to any Employer or be used for, or diverted to, purposes other than for the exclusive benefit of Participants and other persons entitled to benefits under the Plan, except as provided below:

(a)   If, upon termination of the Plan with respect to any Employer, any amounts are held in a suspense account which are attributable to the contributions of such Employer and such amounts may not be credited to the Accounts of Participants, such amounts, upon the written direction of the Committee, will be returned to that Employer as soon as practicable after the termination of the Plan with respect to that Employer.

(b)   Employer contributions under the Plan are conditioned upon the deductibility thereof under Code Section 404, and, to the extent any such deduction of an Employer is disallowed, the Trustee shall, upon the written direction of the Committee, return the amount of the contribution (to the extent disallowed), reduced by the amount of any losses thereon, to the Employer within one year after the date the deduction is disallowed.

11

DOL0000006494

(c)    If an Employer makes a contribution or any portion thereof by a mistake of fact, the Trustee shall, upon written direction of the Committee, return the amount of the contribution or such portion, reduced by the amount of any losses thereon, to the Employer within one year after the date of payment to the Trustee.

Notwithstanding the foregoing, the Trustee has no responsibility as to the sufficiency of the Trust Fund to provide any distribution to an Employer under this Article 5.

## ARTICLE 6.

## CHANGE OF TRUSTEE

**6.1.**    **Resignation.**  The Trustee may resign at any time by giving thirty (30) days' advance written notice to the Company and the Committee and to any other Trustee(s) then acting, unless such notice is waived.

**6.2.**    **Removal of the Trustee.**  The Committee may, with the consent of the Company, which shall not be unreasonably withheld, remove the Trustee by giving thirty (30) days' advance written notice to the Trustee, subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship.

**6.3.**    **Duties of Resigning or Removed Trustee and of Successor Trustee.**  If the Trustee resigns or is removed, it shall promptly transfer and deliver the assets of the Trust Fund to the successor trustee, and may reserve such reasonable amount as it deems necessary to provide for the payment of all fees, expenses and taxes then or thereafter chargeable against the Trust Fund, to the extent not previously paid by the Company. The Company shall be obligated to reimburse the Trust for any amount so reserved by the Trustee. Within ninety (90) days, the resigned or removed Trustee shall furnish to the Company and the successor Trustee an account of its administration of the Trust from the date of its last account. The Company and the Committee shall have one hundred twenty (120) days after the Trustee's mailing of such account within which to file with the Trustee written objections to such account. Except as otherwise required by law, including, but not limited to, ERISA, upon the expiration of such period, the Trustee shall be forever released and discharged from all liability and accountability to the Company, the Participants and the Trust, with respect to the propriety of its acts and transactions that are fully and accurately shown in such account except with respect to any such acts or transactions as to which a written objection has been filed within such one hundred twenty (120) day period with the Trustee. Each successor trustee shall succeed to the title to the Trust Fund vested in its predecessor without the signing or filing of any further instrument, but any resigning or removed trustee shall execute all documents and perform all acts necessary to vest such title or record in any successor trustee.

If the Company does not designate a successor trustee, or if a successor trustee designated by the Company has not accepted its appointment, within thirty (30) days after the Trustee gives notice of its resignation or receives notice of removal, the Trustee may, at the expense of the Trust, apply to a court of competent jurisdiction to appoint a successor trustee.

12

DOL0000006495

Until a successor trustee is appointed, the Trustee shall be entitled to be compensated for its services according to its published fee schedule then in effect for acting as Trustee.

Each successor trustee shall have all the powers, rights and duties conferred by this Trust Agreement as if originally named trustee. No successor trustee shall be personally liable for any predecessor Trustee's act or failure to act and no predecessor trustee shall be liable for any successor trustee's act. With the approval of the Committee, a successor trustee may accept the account rendered and the property delivered to it by its predecessor trustee as a full and complete discharge to the predecessor trustee without incurring any liability or responsibility for so doing.

**6.4. Filling Trustee Vacancy.** The Committee may, with the consent of the Company, which shall not be unreasonably withheld, fill a vacancy in the office of the Trustee as soon as practicable by a writing filed with the person or entity appointed to fill the vacancy.

## ARTICLE 7.

## ADDITIONAL EMPLOYERS

Any Related Company (as defined below) may become a party to this Trust Agreement by:

(a) filing with the Company and the Trustee a certified copy of a resolution of its Board of Directors to that effect; and

(b) filing with the Trustee a certified copy of a resolution of the Board of Directors of the Company consenting to such action.

A "Related Company" is any corporation, trade or business during any period in which it is, along with the Company, a member of a controlled group of corporations, a group of trades or businesses under common control or an affiliated service group, as described in Code Section 414(b), 414(c) and 414(m), respectively, or as described in regulations issued by the Secretary of the Treasury or his delegate pursuant to Code Section 414(o).

13

DOL0000006496

## ARTICLE 8.

### AMENDMENT AND TERMINATION

**8.1.    Amendment.**  While the Company expects and intends to continue the Trust, the Company reserves the right to amend the Trust at any time pursuant to an action of the Company's Board of Directors, except that no amendment shall change the rights, duties and liabilities of the Trustee under this Trust Agreement without its prior written agreement, nor reduce a Participant's benefits to less than the amount such Participant would be entitled to receive if such Participant had resigned from the employ of the Employers on the date of the amendment.  Amendments to the Trust Agreement shall be effective upon execution of such amendments by both the Company and the Trustee.

**8.2.    Termination.**  The Trust may be terminated as to all Employees on any date specified by the Company.  The Trust will terminate as to any Employer on the first to occur of the following:

(a)    the date it is terminated by that Employer;

(b)    the date such Employer's contributions to the Trust are completely discontinued;

(c)    the date such Employer is judicially declared bankrupt under Chapter 7 of the U.S. Bankruptcy Code; or

(d)    the dissolution, merger, consolidation, or reorganization of that Employer, or the sale by that Employer of all or substantially all of its assets, except that, with the consent of the Company, such arrangements may be made whereby the Trust will be continued by any successor to that Employer or any purchaser of all or substantially all of that Employer's assets, in which case the successor or purchaser will be substituted for that Employer under the Trust.

The Trustee's powers upon termination as described above will continue until liquidation of the Trust Fund, or the portion thereof attributable to an Employer, as the case may be.  Upon termination of this Trust, the Trustee shall first reserve such reasonable amounts as it may deem necessary to provide for the payment of any expenses, fees or taxes then or thereafter chargeable to the Trust Fund.  Subject to such reserve, the balance of the Trust Fund shall be liquidated and distributed by the Trustee to or for the benefit of the Participants or their Beneficiaries, as directed by the Committee after compliance with applicable requirements of ERISA, as amended from time to time, or other applicable law, accompanied by a certification from the Committee that the disposition is in accordance with the terms of the Plan and the Trustee need not question the propriety of such certification.  The Company shall have full responsibility to see that such distribution is proper and within the terms of the Plan and this Trust Agreement.

14

DOL0000006497

## ARTICLE 9.

### INDEMNIFICATION AND DEFENSE OF ACTIONS

**9.1.    Indemnification.** For purposes of this Section 9.1, the term "Indemnitees" shall mean the Trustee and its affiliates and their officers, directors, employees and agents. Subject to the applicable provisions of ERISA, the Company and all Employers shall indemnify the Indemnitees for any loss, cost, expense, or other damage, including reasonable attorney's fees, suffered by any of the Indemnitees resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by any one or more of the Indemnitees pursuant to the provisions of this Trust Agreement. The indemnification provided for in this Section 9.1 shall extend to:

    (a)    any action taken or not taken by any of the Indemnitees at the direction or request of the Company, the Committee, the plan administrator or any agent of the Company, the plan administrator or the Committee;

    (b)    any action not taken by any of the Indemnitees in the absence of such direction or request if the Indemnitees are not required by law to act without the receipt of such direction or request; and

    (c)    all reasonable costs and expenses incurred by the Indemnitees in enforcing the indemnification provisions of this Section 9.1, including reasonable attorneys' fees and court costs. However, these indemnification provisions shall not apply to the extent that any loss, cost, expense, or damage with respect to which any of the Indemnitees shall seek indemnification is held by a court of competent jurisdiction, in a final judgment from which no appeal is taken, to have resulted either from the gross negligence of one or more of the Indemnitees, from the willful misconduct of one or more of the Indemnitees or from the material violation or breach of any fiduciary duty imposed under ERISA by any one or more of the Indemnitees.

The foregoing right of indemnification shall be in addition to other rights to which the Trustee may be entitled by law, under the Bylaws or Articles of Incorporation of any Employer, or by reason of insurance coverage of any kind. The Company may, at its own expense and with the prior written consent of the Trustee, settle any claim asserted or proceeding brought against the Trustee when such settlement appears to be in the best interests of the Company, as determined by the Company. If the Company obtains fiduciary liability insurance to protect the Trustee, the provisions of this Section 9.1 shall apply only to the extent that such coverage is insufficient or is not promptly made available to the Trustee.

15

DOL0000006498

**9.2.    Notice and Assumption of Defense.** If one or more of the Indemnitees receives notice of any legal proceeding with respect to which indemnification may be sought against the Company pursuant to this Article 9 (a "Proceeding"), such Indemnitees shall notify the Company of the Proceeding in writing within thirty (30) days after the commencement of the Proceeding. However, the failure by any Indemnitee to so notify the Company shall not relieve the Company from any liability, except to the extent that the failure to notify the Company shall actually have prejudiced the defense of any Proceeding. The Company will be entitled to assume the defense of the Proceeding with counsel reasonably satisfactory to the Indemnitees or to otherwise participate in the Proceeding. If the Company elects to assume the defense of the Proceeding, it then shall pay all costs of defense.

**9.3.    Reimbursement of Expenses.**

The Company shall reimburse the Indemnitees for all reasonable costs that they incur in connection with any Proceeding, including costs of investigation, of testifying in any hearing, of responding to discovery proceedings, and of consulting with the Company or the attorneys for the Company. The Indemnitees shall have the right to employ their own counsel in any Proceeding, and the Company shall pay the fees and expenses of the Indemnitees' counsel as they are incurred, if any one or more of the following conditions are satisfied:

(a)    the employment by the Indemnitees of their own counsel shall be authorized by the Company;

(b)    the Indemnitees are advised by their counsel that there may be one or more legal defenses available to them which are different from or additional to defenses available to the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

(c)    the Company fails to assume the defense of the proceeding and to employ counsel satisfactory to the Indemnitees within 14 days after being notified of the commencement of the Proceeding;

(d)    the Indemnitees are informed by their counsel that a conflict exists with the counsel selected by the Company (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees);

(e)    the Company and the Trustee have a conflict of interest (in which case the Company shall not have the right to assume the defense of the Proceeding on behalf of the Indemnitees); or

(f)    the allegation made against the Trustee is for its own gross negligence or willful misconduct.

If the Company obtains fiduciary liability insurance to protect the Trustee, the provisions of this Section 9.3 shall apply only to the extent that such coverage is insufficient.

16

DOL0000006499

### 9.4.    Governmental Investigations.

The provisions of this Article 9 shall apply if any governmental or private commission or regulatory authority investigates any of the Indemnitees, or requires any of the Indemnitees to testify in any hearing in connection with any investigation, regarding the performance of services by the Indemnitees pursuant to this Trust Agreement. Investigations covered by this Article 9 shall include, but shall not be limited to, investigations conducted by any agency of the United States or of any state, by any committee of the Congress of the United States or of the legislature of any state, or by a stock exchange or other entity having authority to investigate or regulate similar to that of a stock exchange. In the case of any such investigation, the Indemnitees shall have the right to employ separate counsel to represent them, and the Company shall pay the reasonable fees and expenses of the Indemnitees' counsel as they are incurred. The Trustee agrees that it shall reasonably cooperate with the Company in connection with any such investigation.

### 9.5.    Limitation.

If a court of competent jurisdiction holds that any payment or award of indemnification pursuant to the terms of this Agreement is unavailable to any one or more of the Indemnitees from the Company for any reason other than their gross negligence or willful misconduct, the Company then shall nonetheless reimburse the affected Indemnitees, as required by Section 9.1, but taking into account the basis for the denial of full indemnification by the court.

### 9.6.    Additional Agreements.

The Trustee and the Company may enter into additional letter agreements further delineating the indemnification agreement of this Article 9, provided the letter agreement is consistent with and does not violate ERISA or New York law.

[Balance of Page Intentionally Blank]

17

IN WITNESS WHEREOF, the Company and the Trustee have caused these presents to be signed and their seals to be affixed hereunto and attested by their duly authorized officers all as of the day and year first above written.

**COMPANY**:

MARAN, INC.

By: _____
Name: _____
Its: _____

**TRUSTEE**:

First Bankers Trust Services, Inc., not in its corporate capacity but solely in its capacity as trustee of the Maran, Inc. Employee Stock Ownership Trust

By: _____
Name: _____
Its: _____

*Signature Page to the Trust Agreement*

18

DOL0000006501

IN WITNESS WHEREOF, the Company and the Trustee have caused these presents to be signed and their seals to be affixed hereunto and attested by their duly authorized officers all as of the day and year first above written.

**COMPANY:**

MARAN, INC.

By:_____
Name:_____
Its:_____

**TRUSTEE:**

First Bankers Trust Services, Inc., not in its corporate capacity but solely in its capacity as trustee of the Maran, Inc. Employee Stock Ownership Trust

By:_____
Name: Ashley Melton
Its:    Trust Officer

*Signature Page to the Trust Agreement*

18

DOL0000006502

**Exhibit A**

**Section 13.**

## VOTING AND TENDERING OF COMPANY STOCK

The voting of Company Stock held in the Trust, and if a tender offer is made for Company Stock, the tendering of such shares, shall be subject to the provisions of ERISA and the following provisions, to the extent such provisions are not inconsistent with ERISA:

(a)  **Allocated Shares.** For purposes of this Section, shares of Company Stock shall be deemed to be allocated and credited to a Participant's ESOP Stock Account in an amount to be determined based on the balance in such account on the Accounting Date coincident with or next preceding the record date of any vote or tender offer.

(b)  **Voting of Company Stock.** With respect to any corporate matter which involves the voting of Company Stock which is a registration-type class of securities, or which involves the voting of Company Stock which is not a registration type class of securities with respect to the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all of the assets of a trade or business, or such other transactions which may be prescribed by regulation, each Participant may be entitled to direct the Trustee as to the exercise of any shareholder voting rights attributable to shares of Company Stock then allocated to his Accounts, but only to the extent required by Sections 401(a)(22) and 409(e) of the Code and the regulations thereunder. For purposes of the foregoing sentence, each Participant shall be a Named Fiduciary of the Plan as described in Section 402(a)(2) of ERISA. The Administrator shall have the sole responsibility for determining when a corporate matter has arisen that involves the voting of Company Stock under this provision. If a Participant is entitled to so direct the Trustee, all allocated Company Stock as to which such instructions have been timely received by the Trustee (which may include an instruction to abstain) shall be voted by the Trustee in accordance with such instructions, provided that the Trustee may vote the shares as it determines is necessary to fulfill its fiduciary duties under ERISA. The Trustee shall vote as provided in the Trust Agreement any shares of Company Stock held in the Loan Suspense Account, and any allocated shares of Company Stock as to which no voting instructions have been received, subject to its fiduciary duties under ERISA.

(c)  **Tendering of Company Stock.** In the event of a tender offer or other offer to purchase shares of Company Stock held by the Trust, the Trustee

A-1

shall tender or sell the shares in its sole discretion, subject to the fiduciary duties under ERISA.

In carrying out its responsibilities under this Section, the Trustee may rely on information furnished to it by the Administrator, including the names and current addresses of Participants, the number of shares of Company Stock allocated to their Accounts, and the number of shares of Company Stock held by the Trustee that have not yet been allocated.

A-2

DOL0000006504